| | | |
|---|---|---|
| Lynn Belsky, on behalf of herself and all others similarly situated, | ) ) ) | No. 13 C 1758 |
| Plaintiff, | ) ) | Judge Thomas M. Durkin |
| v. | ) ) ) | |
| Field Imports, Inc. d/b/a Fields BMW, and Prizm Administrative Solutions, Inc., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lynn Belsky brought this putative class action against Defendants Fields Imports, Inc. ("Fields"), Prizm Administrative Solutions, Inc. ("Prizm"), BMW of North America ("BMW"), and Lyndon Property Insurance Co. ("Lyndon"). The complaint set forth a tort claim premised on a strict liability theory based on Belsky's allegation that an engine bolt in her vehicle was defective at the time of manufacture. The complaint also set forth several state law breach of contract claims against the defendants. The defendants all separately moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). Rather than oppose the motion, Belsky filed an amended complaint, which dropped the strict liability claim and alleged state law breach of contract claims solely against BMW, Fields, and Prizm.[1] R. 26. Fields and Prizm have separately moved to dismiss the

---

[1] Before filing the amended complaint, Belsky dismissed Lyndon from the case without prejudice. R. 24, 29. After Belsky filed her amended complaint, BMW

claims against them under Rule 12(b)(6).[2] R. 30, 33. For the following reasons, these motions are granted, and Belsky's complaint is dismissed with prejudice.

## Background

The following relevant and well-pled facts, drawn from Belsky's amended complaint, are accepted as true and are set forth in the light most favorable to Belsky. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). In evaluating the defendants' motions to dismiss, the Court considers both "documents attached to the complaint" and "documents that are critical to the complaint and referred to in it." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012).

Fields is a company that sells and services BMW vehicles. R. 26 ¶ 12. On June 14, 2005, Belsky purchased a new 2006 BMW sedan from Fields for $28,985. *Id.* ¶¶ 12, 13; *see also* R. 26 at 10, Exh. A, Sales Contract. On June 30, 2009, Belsky "purchased from Fields acting on behalf of Prizm" a "Total Protection Plan" that was administered by Prizm. R. 26 ¶ 14; *see also* R. 32 at 16-24, Service Agreement.[3]

---

moved to dismiss the claims against it under Rule 12(b)(6). R. 34. Belsky then voluntarily dismissed BMW from the case without prejudice, R. 37, 43, leaving Fields and Prizm as the remaining defendants.

[2] Fields also moved pursuant to Rule 12(f)—the motion was made pursuant to Rule 16(f), but the Court presumes Rule 12(f) is the vehicle through which Fields seeks relief—to strike the allegation in Belsky's amended complaint referring to a defendant class. R. 32 at 13-14. In her response to Fields's motion, Belsky stated that she was not seeking to certify a defendant class. R. 41 at 10. Fields's motion to strike the reference to "similarly situated" dealers in the caption of Belsky's amended complaint is therefore granted.

[3] Because Belsky did not attach the entire Service Agreement to her amended complaint, the Court refers to the complete Service Agreement attached to Fields's motion to dismiss.

Belsky paid $2,824 for the protection plan. R. 26 ¶ 14. The purchase of the Service

Agreement was then memorialized in a Retail Order. *Id.* ¶ 16; R. 26 at 17.

The Service Agreement provides in relevant part:

> In the event of a Breakdown of a part listed below, We will pay for the reasonable cost to repair or replace the part, less any Deductible, in accordance with the general provisions contained within this Agreement.

R. 32 at 18. The Service Agreement further provides:

WHAT IS NOT COVERED

This Agreement does not provide Coverage:

> k. For any of the following parts: Carburetor, Battery, Shock Absorbers, Standard Transmission Clutch Assembly, Friction Clutch Disc and Pressure Plate, Throw Out Bearing, Manual and Hydraulic Linkages, Distributor Cap and Rotor, Safety Restraint Systems (including Air Bags), Glass, Lenses, Sealed Beams, Light Bulbs, Brake Rotors and Drums, Exhaust and Emission Systems, Weather Stripping, Trim, Moldings, Bright Metal, Chrome, Upholstery and Carpet, Paint, Outside Ornamentation, Bumpers, Body Sheet Metal and Panels, Tires (except as may otherwise be provided under the SCHEDULE OF COVERAGES Section), Wheels or Rims, Nuts, Bolts, and Fasteners.

*Id.* at 19 (capitalization in original).

Three years after Belsky purchased the Service Agreement, on October 1,

2012, the low oil warning light in Belsky's vehicle activated, and Belsky brought her

vehicle to Fields to repair a "fluid type leak from under the engine area." R. 26 ¶ 17.

Fields technicians replaced the broken aluminum head bolts and removed the

vehicle's "intake, valve cover, and oil pan to retrieve broken bolt debris in [the] oil

pan." *Id.* ¶ 18; R. 26, Exh. D, Invoice. This repair took 12.30 hours and cost

$1,832.70. R. 26 ¶¶ 18, 19; R. 26, Exh. D. Fields employees informed Belsky that none of these costs were covered by the Service Agreement. R. 26 ¶ 19.

Belsky filed this suit bringing state law breach of contract claims against Fields and Prizm. Belsky alleges that (1) Fields breached the Sales Contract ("Count I"); (2) Prizm and Fields breached the Service Agreement ("Count II"); and (3) Fields breached the Retail Order ("Count III").

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

## Analysis

### I.    Claims Against Fields

#### A.       Count I—Breach of Sales Contract

Belsky alleges in Count I that Fields breached the Sales Contract by selling her a vehicle with "[b]olts that shear, crumble, or otherwise break resulting in destructive debris in the oil pan, oil leaks in the engine block and significant fire risk."[4] R. 26 ¶ 31. She further alleges that Fields breached the contract by selling a vehicle that "did not provide for adequate safety, reliability, or resale value." *Id.* ¶ 32. Fields moves to dismiss this Count on two grounds. First, Fields argues that Belsky's breach of contract claim is time-barred. Second, Fields contends that because Belsky fails to identify any provision in the Sales Contract that Fields actually breached, her breach of contract claim fails.

A statute of limitations defense is "not normally part of a motion under Rule 12(b)(6)." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). Such a defense may be appropriate, however, where the plaintiff pleads herself out of court by alleging facts sufficient to establish that the claim is untimely under the applicable statute of limitations. *See Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009); *see also Center Ice of Dupage, Inc. v. Burley's Rink Supply, Inc.*, No. 96 C 5537, 1997 WL 43230, at *2 (N.D. Ill. Jan. 24, 1997) (noting statute of limitations defense may be properly asserted as part of

---

[4]   Because the Sales Contract is a document critical to Belsky's complaint and referred to in it, the Court may consider its contents in ruling on Fields's motion to dismiss. *See Geinosky*, 675 F.3d at 745 n. 1; *see also* Fed. R. Civ. P. 10(c).

motion to dismiss "when the time alleged in the complaint shows that the action was not brought within the statutory time period") (internal quotation marks omitted).

Fields contends that Belsky's breach of contract claim is subject to the four-year statute of limitations set forth in 810 ILCS 5/2-725 of Illinois's Uniform Commercial Code ("UCC").[5] That statute, which applies to the "breach of any contract for sale," provides that "[a]n action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." 810 ILCS 5/2-725(1). The statute further provides that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." 810 ILCS 5/2-725(2).

Belsky proposes a different statute of limitations. She argues that her breach of contract claim is governed by the ten-year statute of limitations in 735 ILCS 5/13-206, which governs written contracts. That statute provides, "[e]*xcept as provided in Section 2-725 of the 'Uniform Commercial Code'*, actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing and actions brought under the Illinois Wage Payment and Collection Act shall be commenced within 10 years next after the cause of action accrued." 735 ILCS 5/13-206 (emphasis added). A reading of this statute demonstrates that it excludes from its application contracts that are governed by the four-year statute of limitations in 810 ILCS 5/2-725. In other words, contracts

_____

[5] The parties appear to agree that Illinois law governs the analysis.

that fall within the scope of article 2 of Illinois' UCC are subject to the four-year limitations period of 810 ILCS 5/2-725, not the ten-year limitations period of 735 ILCS 5/13-206. To determine the applicable statute of limitations, the Court must examine whether Belsky's breach of contract claim falls within 810 ILCS 5/2-725.

Article 2 of the UCC applies to "transactions in goods," 810 ILCS 5/2-102, and 810 ILCS 5/2-725 applies to a "breach of any contract for sale." Belksy attempts to avoid the application of the four-year statute of limitations in 810 ILCS 5/2-725 by arguing that the transaction between her and Fields was not a sale of goods. She does not argue, nor could she, that her contract with Fields was not a sales contract. Belsky's claim that the transaction was not a sale of goods is belied by the allegations in her complaint, which demonstrate that the transaction between her and Fields was a sale of goods as defined in Illinois' UCC. According to the complaint, Belsky purchased her vehicle from Fields for $28,985 and signed the Sales Contract memorializing the sale. R. 26 ¶¶ 13, 29-30. This transaction falls within the UCC's definitions of "sale" and "goods." *See* 810 ILCS 5/2-105(1) (defining "goods" as "all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale"); 810 ILCS 5/2-106(1) (defining "sale" as "the passing of title from the seller to the buyer for a price"). Because the transaction at issue involved a contract for the sale of goods, any claim alleging a breach of that contract had to be brought within four years of the accrual of the breach. *See Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill.2d 325, 355 (2002).

7

Belsky attempts to delay the running of the limitations period by arguing that the limitations period began to run on October 1, 2012, when the vehicle began leaking and the bolts broke, not June 14, 2005, when Belsky bought the vehicle from Fields. R. 41 at 3. This argument is foreclosed by the plain language of 810 ILCS 5/2-725(2). A cause of action under the statute accrues when the breach occurs, not when one party learns of the breach. *Id.*; *see also Center Ice of Dupage*, 1997 WL 43230, at *2 ("[Section] 2-725 does not contain a 'discovery' rule. Aggrieved parties must file their claims within four years of the breach; when the claimants actually learn of the breach is immaterial."); *Nelligan v. Tom Chaney Motors, Inc.*, 133 Ill. App. 3d 798, 801-02 (2d Dist. 1985) ("A cause of action [under § 2-725] accrues when tender of delivery is made . . . . The language of the statute . . . clearly proscribes the application of the discovery rule . . . making plaintiff's assertions as to when she discovered the breach irrelevant.").

Here, if there was a breach of the Sales Contract, that breach occurred when Fields sold Belsky the vehicle on June 14, 2005. It did not occur, as Belsky alleges, when she discovered that Fields sold her an allegedly defective vehicle over seven years later. Because the breach occurred on June 14, 2005, R. 26 ¶ 13, Belsky's complaint, which was filed on March 7, 2013, R. 1, was filed more than three years after the four-year limitations period expired. Belsky's breach of the Sales Contract claim is therefore untimely.[6]

---

[6] Belsky is attempting to represent a class that could potentially come within the applicable statute of limitations. But because her claim falls outside the statute of limitations, she is not a proper class representative. *See* Federal Rule of Civil

Fields makes a second alternative argument in support of dismissal of the breach of Sales Contract claim, which the Court will briefly address. Fields asserts that because Belsky fails to identify any provision in the Sales Contract that Fields actually breached, her breach of contract claim fails. According to Fields, the Sale Contract did not contain any promise relating to bolts, safety, reliability, or resale value and Fields cannot be held liable for breaching a non-existent provision of the contract.

To establish a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) plaintiff's substantial performance; (3) defendant's breach; and (4) damages. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *Carlton at the Lake, Inc. v. Barber*, 401 Ill. App. 3d 528, 531 (1st Dist. 2010).

Fields argues in its motion to dismiss that Belsky has failed to point to any term of the Sales Contract that Fields actually breached. Belsky in turn failed to respond to this argument in her opposition brief, thus forfeiting the point. *See, e.g.*, *Lekas v. Briley*, 405 F.3d 602, 614-15 (7th Cir. 2005) (where plaintiff "did not present legal arguments or cite relevant authority to substantiate [his] claim in responding to defendants' motion to dismiss," his "claim has been waived"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999) ("[B]y failing to respond responsively to the motion to dismiss . . . [plaintiff] forfeited her right to

---

Procedure 23(a)(4) (requiring that "the representative parties will fairly and adequately protect the interests of the class"). Accordingly, the Court denies Belsky's motion for class certification. R. 7.

continue litigating her claim."); *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("[W]hen presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants.") (internal citations omitted); *Di Cosola v. CitiMortgage, Inc.*, No. 11 C 2308, 2011 WL 4808188, at *1 (N.D. Ill. Oct. 11, 2011).

A review of the Sales Contract demonstrates that Fields's contention is correct in any event. "[A] plaintiff may plead [herself] out of court by attaching documents to the complaint that indicate that [she] is not entitled to judgment." *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) (internal quotation marks omitted). Here, Belsky has done just that. In ruling on a 12(b)(6) motion, "[w]here an exhibit and the complaint conflict, the exhibit typically controls." *Forrest v. Universal Savs. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). "A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document." *Id.*

Having done so here, the Court agrees with Fields's interpretation of the Sales Contract. Belsky has not pointed to, and the Court cannot find, any term of the Sales Contract containing any promise relating to bolts, safety, reliability, or resale value, as Belsky alleges. At the very least, Fields's argument in this regard is plausible, which is all that is required given Belsky's failure to respond to Fields's contention. *See Kirksey*, 168 F.3d at 1041 ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try

to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response. In effect the plaintiff was defaulted for refusing to respond to the motion to dismiss. And rightly so."). Thus, even if Belsky's breach of contract claim were timely, it would be subject to dismissal on the separate ground that Belsky has not demonstrated that Fields actually breached the Sales Contract.

Instead of responding to Fields's argument and pointing to a provision of the Sales Contract that Fields breached, Belsky argues for the first time that the Sales Contract contained an implied covenant of good faith of fair dealing, which Fields violated, entitling her to relief. R. 41 at 3-4. Belsky asserts (without any argument) that "due to the [b]olts, Belsky's . . . vehicle[ ] [was] not safe, reliable, or functional" and therefore Fields acted in bad faith and breached the implied covenant of good faith and fair dealing when it sold her the vehicle. *Id.*

"[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (internal quotation marks omitted). In light of this, Belsky cannot attempt to amend her complaint in her opposition brief to include a breach of the implied covenant of good faith and fair dealing, when such a claim was not included in her amended complaint.

Even if the Court were inclined to allow Belsky replead this claim in another amended complaint, the flaw in any claim for a breach of the implied covenant of

good faith and dealing cannot be cured by repleading in any event.[7] *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) ("Even though Rule 15(a) provides that 'leave shall be freely given when justice so requires,' a district court may deny leave to amend for . . . futility. The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted.") (citations and some internal quotation marks omitted).

To establish a breach of the duty of good faith and fair dealing under Illinois law, the complaining party must show that the contract at issue vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443-45 (7th Cir. 1992); *Gore v. Ind. Ins. Co.,* 376 Ill. App. 3d 282, 286 (1st Dist. 2007).

Defendants contend (correctly) that Illinois law does not recognize a breach of the implied duty of good faith and fair dealing as an independent cause of action. *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995) (interpreting Illinois law and stating "the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract"). While "[t]he UCC [810 ILCS 5/1-203] imposes an obligation of good faith in the performance of all contracts under its domain," this duty "merely guides the construction of contracts

---

[7] The Court notes that Belsky has already amended her complaint once before in response to motions to dismiss filed by the defendants.

and does not create independent duties of the contracting parties." *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 381 (7th Cir. 2000) (internal quotation marks omitted). Thus, while Illinois contracts contain an implied obligation to act in good faith, this obligation does not provide a party with a separate, independent cause of action. *Id.* Numerous courts in this district have dismissed causes of action for a breach of the implied duty of good faith and fair dealing when they are not asserted within a breach of contract claim. *See Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. Jan. 26, 2010) (collecting cases). And the Seventh Circuit has approved of such dismissals on this basis. *See Zeidler v. A & W Rests., Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("[W]e note that the district court correctly dismissed on the pleadings the Zeidlers' remaining claim that A & W breached an independent covenant of good faith and fair dealing. The covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law.").

Here, to the extent Belsky seeks to assert a breach of the duty of good faith and fair dealing as an independent claim, that claim fails at the outset. Well-established precedent forecloses it. Belsky baldly asserts that due to the bolts, her vehicle was unsafe, unreliable and non-functional and "as such, Fields breached the implied covenant of good faith and fair dealing." R. 41 at 3-4. But Belsky has failed to allege how the contract at issue vested Fields with discretion in performing an obligation under the contract and how Fields exercised its discretion in any manner

inconsistent with the reasonable expectations of the parties. Without pleading such allegations, Belsky's claim cannot succeed.

Accordingly, the Court concludes that: (1) Belsky cannot now in her opposition brief attempt to assert a breach of the implied covenant of good faith and fair dealing when such a claim was not included in her amended complaint; and (2) leave to amend the complaint to include such a claim would be futile given the allegations in Belsky's response brief. Finally, even if Belsky could adequately replead such a claim in an amended complaint, her opposition brief does not request such an opportunity. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting plaintiff's argument district court erred in dismissing complaint with prejudice, rather than without prejudice and with leave to amend, where plaintiff did not request leave to amend). For all these reasons, to the extent that Belsky attempts to now raise a breach of the implied covenant of good faith and fair dealing, that claim is dismissed with prejudice.

In sum, Belsky's claim alleging a breach of the Sales Contract is time-barred, and it is dismissed with prejudice. Even if the claim were not time-barred, it would subject to dismissal with prejudice on the separate ground that Belsky has failed to point to any provision in the Sales Contract that Fields actually breached. To the extent that Belsky attempts to now raise a breach of the implied duty of good faith and fair dealing under Illinois law, that claim fails as well.[8]

---

[8] Fields also argued in its motion to dismiss that Belsky has failed to plead that Fields breached any warranties in connection with the sale of her vehicle. R. 32 at 7-8. According to Fields, any such claim would fail because Fields appropriately

### B.    Count II—Breach of the Service Agreement

Count II alleges that Fields, acting on behalf of Prizm, breached the Service Agreement by refusing to cover the cost of repairs; these costs included the cost of the replacement part and the labor to perform the replacement.[9] R. 26 ¶ 37. Fields moves to dismiss this Count, arguing that it cannot be held liable for any breach of the Service Agreement because it was acting in a representative capacity for a disclosed principal, Prizm.

Generally, under Illinois law an agent cannot be held liable for a breach of contract by its principal if the agency relationship was disclosed at the time the contract was executed. *See Strzelecki v. Schwarz Paper Co.*, 824 F. Supp. 821, 829 (N.D. Ill. 1993) (citing Illinois cases); *see also Fittante v. Olsson*, No. 12 C 2200, 2013 WL 439125, at *3 (N.D. Ill. Feb. 15, 2013) (citing, among others, Restatement (Second) of Agency § 320) (1958) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.")). Belsky agrees (as she must) with this well-

---

disclaimed all warranties. *Id.* Belsky failed to identify any warranty that Fields breached in her response to Fields's motion to dismiss. By doing so, the Court assumes that Belsky concedes this argument and does not wish to pursue such a claim. *See Norhurst, Inc. v. Acclaim Sys., Inc.*, No. 11 C 7222, 2012 WL 473135, at *2 (N.D. Ill. Feb. 9, 2012) ("By failing to respond to Acclaim's argument, [the plaintiff] has conceded it."). In any event, Belsky's failure to respond to Fields's contention results in forfeiture of the claim. *See, e.g.*, *Lekas*, 405 F.3d at 614-15; *Kirksey*, 168 F.3d at 1043; *Stransky*, 51 F.3d at 1335; *DiCosola*, 2011 WL 4808188, at *1.

[9]  Because the Service Agreement is a document critical to Belsky's complaint and referred to in it, the Court may consider its contents in ruling on Fields's motion to dismiss. *See Geinosky*, 675 F.3d at 745 n. 1; *see also* Fed. R. Civ. P. 10(c).

settled principle but argues that Fields can still be held liable because the agency relationship was not disclosed in the Service Agreement.

Fields asserts that Belsky cannot now disavow knowledge of Fields's agency relationship with Prizm because the allegations in the amended complaint confirm that Belsky knew when she purchased the Service Agreement that Fields was acting, not on its own behalf, but for the benefit of Prizm. The complaint alleges:

> On or about June 30, 2009, Plaintiff purchased from Fields acting on behalf of Prizm, for $2,824.00 a uniform "Supreme" Coverage Total Protection Plan Extended Service Agreement ("Service Agreement" [Contract #2262750]) administered by Prizm.

R. 26 ¶ 14. The complaint further alleges:

> Fields, at all times relevant herein acting on behalf of Prizm, made an offer to sell to Plaintiff and the Plaintiff Class a "Service Agreement" for her Vehicle.

*Id.* ¶ 35.

Again, Belsky failed to respond to Fields's argument on this point, thus forfeiting it. The aforementioned allegations, which assert that Fields was "at all relevant times" acting on behalf of Prizm, contradict Belsky's assertions that she was unaware that Fields was acting in a representative capacity. It therefore appears that Belsky has "ple[d] [herself] out of court by pleading facts that show that [she] has no legal claim" against Fields. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). At the very least, Fields's argument in this regard is plausible, *see Kirksey*, 168 F.3d at 1041, and that is all that is required in light of Belsky's failure to respond to Fields's contention. *See, e.g.*, *Menard, Inc. v. U.S. Equities Dev., Inc.*, No. 01 C 7142, 2002 WL 31050160, at *4 (N.D. Ill. Sept. 13, 2002) (granting

motion to dismiss where complaint alleged that defendant was acting as principal's agent); *Global Container Lines, Ltd. v. Conflo Lines*, No. 93 C 3216, 1994 WL 118150, at *1 (N.D. Ill. Mar. 28, 1994) ("Conflo concedes that it knew that Amerford was acting on behalf of its principal, Essex. Accordingly, Conflo has failed to state a claim against Amerford in its third party complaint, and Amerford is therefore entitled to dismissal of Conflo's claim against it.").

Even if this Court were willing to overlook this forfeiture, Belsky's attempts to invoke the undisclosed principal exception to the agency rule cannot succeed. According to Belsky, the "plain language of the Service Agreement binds Fields in its capacity as Dealer." R. 41 at 4. To support this argument, Belsky points to the first page of the Service Agreement, which states:

> The undersigned purchaser of this Agreement has read the Agreement, which consists of the DECLARATION Section and the COVERAGE Section. The DECLARATION Section identifies the Coverage selected. The specific components covered are identified in the SCHEDULE OF COVERAGES Section. Purchase of this Agreement is not required in order to purchase a Vehicle or obtain Vehicle financing. You may pay for this Agreement by cash or by including it in the financing of Your Vehicle. If this Agreement has been financed, above lien holder shall be entitled to any refunds resulting from cancellation. FOR REQUIREMENTS AND/OR DISCLOSURES THAT APPLY SPECIFICALLY TO YOU, PLEASE REVIEW THE STATE SPECIFIC SECTION OF THIS AGREEMENT.

R. 32 at 16 (capitalization in original). Belsky claims that the aforementioned paragraph, which is on the cover page of the Declaration Section of the Service Agreement, encompasses the entirety of the agreement between her and Fields. Recognizing that the Declaration explicitly instructs Belsky to refer to the Special State Requirements/Disclosures section of the Agreement, Belsky argues that this

specific section is "outside of the four corners of the Agreement" and the fact that the Declaration refers to, but does not explicitly include the Special State Requirements/Disclosure section, creates an "unresolvable ambiguity" to the Agreement, which should be construed against Fields, the drafter of the Agreement. R. 41 at 5. The Court has reviewed the Service Agreement and finds that because the Service Agreement plainly incorporated the Special State Requirements /Disclosure section into the Agreement, no ambiguity exists.

The Coverage Section of the Service Agreement uses the pronouns "We," "Us," and "Our" to describe who is bound by the language in the Service Agreement. The Definitions Section of the Agreement defines what is meant when those terms are used:

> We, Us, Our—Means (a) the dealer who sold or leased your Vehicle to You (b) the vendor who sold this Agreement to You or (c) the Administrator named herein, as determined by state statute. Please review the SPECIAL STATE REQUIREMENTS/DISCLOSURES Section of this Agreement.

R. 32 at 17 (capitalization in original). The Illinois section of the Special State Requirements/Disclosure Section then specifically states the following definition replaces the aforementioned definition in the Definitions Section:

> We, Us, Our—Means the Administrator, Prizm Administrative Solutions, Inc., who is obligated to perform under this Agreement as shown in the DECLARATION section of Your Agreement.

*Id.* at 21 (capitalization in original).

"'Generally [under Illinois law], one instrument may incorporate another instrument by reference.'" *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664

(7th Cir. 2002) (quoting *Turner Constr. Co. v. Midwest Curtainwalls, Inc.*, 187 Ill. App. 3d 417, 421 (1st Dist. 1989)). "The contract must show an intent to incorporate the other document and make it part of the contract itself." *Turner Constr.*, 187 Ill. App. 3d at 421. Here, the Declaration Section of the Service Agreement—which is on the Agreement's first page—explicitly tells the purchaser of that Agreement to review the State Specific Section of the Agreement for requirements and disclosures that specifically apply to the purchaser. The Definitions Section of the Agreement also explicitly informs the purchaser to review the State Specific Section of the Agreement. These two sections make clear that the Special State Requirements/Disclosure Section was meant to be incorporated into the Service Agreement. In light of the clear language of these sections demonstrating an intent to incorporate the Special State section into the Agreement, the Court rejects Belsky's argument that the reference to the Special State section in the Service Agreement creates an "unresolvable ambiguity."

Belsky next claims that by requiring her to follow these instructions to find this information about Prizm, the Agreement essentially "conceals the purported actual identity of the contracting parties within a labyrinth of boilerplate text and four point font hidden in the second column of a reference addendum." R. 41 at 5. Not true. Again, the Declaration section of the Service Agreement explicitly tells the purchaser of that Agreement to review the State Specific Section of the Agreement, and the Definitions Section of the Agreement does the same. The Illinois section (to which the Declaration and Definitions sections both direct Belsky) then clearly

states that the Administrator, Prizm, is obligated to perform under the Agreement. The directions regarding which sections of the Agreement the purchaser was to review for certain information could not have been more clear. Nothing in the Agreement indicates that Fields sought to hide the agency relationship from Belsky's attention, and no other evidence indicates that anyone reading the Agreement would be unable to find, read, or understand the language regarding the agency relationship. The print is small, but it is legible. And the language relating to Prizm in the Illinois Section of the Agreement is clearly set off so it cannot be said that the language was "buried" in the Agreement. And Belsky does not allege that she never received the Special State Requirements/Disclosure section. Accordingly, the Court finds no ambiguity in the agreement and concludes that Belsky cannot reasonably claim that she was unaware of Fields's agency relationship to Prizm where the language of the Agreement clearly discloses it. *Cf. Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir. 1990) (rejecting "fine print" argument in context of unconscionability claim where small but not fine print could be "read comfortably"); *Copello v. Boehringer Ingelheim Pharms. Inc.*, 812 F. Supp. 2d 886, 894-95 (N.D. Ill. 2011) (collecting cases rejecting other "fine print" procedural unconscionability arguments).

This result, the Court notes, is consistent with the admitted understanding of the agreement by the parties to the contract (Prizm and Belsky)—Belsky admitted in her amended complaint that Fields was acting on behalf of Prizm and Prizm has

acknowledged that "[t]he only parties in privity of contract, pursuant to the terms of the Service Agreement, are [Belsky] and Prizm." R. 16-1 at 5.[10]

The Court adds that even if Belsky could avoid her forfeiture and also somehow prevail on her argument that Fields was not a disclosed agent of Prizm, such success would not entitle Belsky to relief. Fields additionally argues in its motion to dismiss that the Service Agreement provides no coverage for the parts that Belsky alleges were defective. In its motion to dismiss, Prizm makes a similar argument. The Court discusses that argument (which it finds to be meritorious) below, and to the extent those arguments apply to Fields, the Court incorporates that analysis here. Thus, even if Belsky could establish that Fields was not acting solely in its representative capacity, she could not demonstrate that Fields actually breached the Service Agreement because as demonstrated below, the Service Agreement excludes from coverage the parts Belsky claims were defective.

Ultimately, for all of the aforementioned reasons, Belsky cannot succeed on her claim that Fields breached the Service Agreement, and the Court dismisses Count II against Fields with prejudice.

### C.    Count III—Breach of the Retail Order

Belsky alleges in Count III of her amended complaint that Fields breached the Retail Order[11] when it refused to cover the cost to repair the defective bolts.[12] R.

---

[10]   This filing was an earlier motion to dismiss filed jointly by both Lyndon and Prizm.

[11]   Because the Retail Order is a document critical to Belsky's complaint and referred to in it, the Court may consider its contents in ruling on Fields's motion to dismiss. *See Geinosky*, 675 F.3d at 745 n. 1; *see also* Fed. R. Civ. P. 10(c).

26 ¶ 42; *see also* R. 25 at 17. According to Belsky, on June 30, 2009, she purchased a BMW Maintenance Program Upgrade Agreement at the same time that she purchased the Total Protection Plan Service Agreement from Fields and Prizm. R. 41 at 9. The Retail Order dated June 30, 2009 indicates a total payment amount of $4,519, which reflects, according to Belsky, a payment of $2,824 for the Service Agreement and a payment of $1,695 for the BMW Maintenance Program Upgrade Agreement. *Id.* Both transactions, says Belsky, were invoiced in the Retail Order. *Id.* Fields moves to dismiss this Count, arguing that Belsky has failed to point to any promise or obligation in the Retail Order requiring Fields "to cover the cost of repairs, including both labor and parts" as Belsky claims.

Belsky once again has failed to respond to Fields's argument in her opposition brief. And a review of the Retail Order reveals that missing from that document is any provision imposing any obligation on Fields to reimburse Belsky for the cost to repair the defective bolt. In any event, Fields has presented a plausible argument on this point, which Belsky has failed to rebut in any way. *See Kirksey*, 168 F.3d at 1041. Accordingly, the Court finds that Belsky has failed to

---

[12]  The Court finds this Count confusing. Belsky alleges that Fields committed a separate breach of contract when it breached the Retail Order, but it appears from Belsky's allegations that the Retail Order merely memorializes the sale of the Service Agreement from Fields to Belsky (an issue that Fields contests but is one that need not be resolved here). Belsky may be attempting to establish Fields's liability for breach of the Service Agreement—which the Court has concluded is not possible since Fields was a disclosed agent—by arguing that Fields accepted the Retail Order. But Belsky has pled the breach of the Retail Order as a separate breach of contact claim in her amended complaint, and the Court will analyze the claim as pled.

demonstrate a breach of the Retail Order, and dismisses Count III against Fields with prejudice.[13]

## II. Claim against Prizm—Breach of the Service Agreement

Belsky also alleges in Count II of her amended complaint that Prizm breached the Service Agreement by "refusing to cover the cost of repairs, including both labor and parts," for the bolts in her vehicle. R. 26 ¶ 37. Prizm moves to dismiss this Count, arguing that the plain language of the Service Agreement explicitly excludes all bolts from coverage. Interpreting the language of the Service Agreement differently, Belsky counters that the only bolts excluded from coverage under the Service Agreement are "wheel bolts" and because the bolts replaced in her vehicle were not "wheel bolts," Prizm was required to reimburse her for the cost to replace them.

The rules of contract interpretation are well-settled. Under Illinois law, the primary objective in construing a contract is to give effect to the intent of the parties. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). The language of a contract, "given its plain and ordinary meaning, is the best indication of the parties' intent." *Id.* at 233. The court first asks if the contract language is ambiguous, a question of law. *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379 (7th Cir. 2009). If the language of a contract is unambiguous, it will be given its plain and ordinary meaning and enforced as written, without reference to extrinsic evidence. *Harmon*

---

[13] Because the Court dismisses this Count on this ground, there is no need for the Court to address the other arguments Fields points to in support of dismissal of this claim.

*v. Gordon*, 712 F.3d 1044, 1049-50 (7th Cir. 2013). Where the language of the contract is susceptible to more than one reasonable interpretation, however, it is ambiguous, and a court may then consider extrinsic evidence to ascertain the parties' intent. *Gallagher*, 226 Ill. 2d at 233. That the parties disagree on the interpretation of a contract's language does not automatically render that contract ambiguous. *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) (interpreting Illinois law). Rather, "[t]he question of contract ambiguity turns largely on whether the language is "reasonably susceptible to more than one meaning." *Id.* (internal quotation marks omitted).

Here, the Service Agreement provides in pertinent part:

This Agreement does not provide Coverage:

k.     For any of the following parts: Carburetor, Battery, Shock Absorbers, Standard Transmission Clutch Assembly, Friction Clutch Disc and Pressure Plate, Throw Out Bearing, Manual and Hydraulic Linkages, Distributor Cap and Rotor, Safety Restraint Systems (including Air Bags), Glass, Lenses, Sealed Beams, Light Bulbs, Brake Rotors and Drums, Exhaust and Emission Systems, Weather Stripping, Trim, Moldings, Bright Metal, Chrome, Upholstery and Carpet, Paint, Outside Ornamentation, Bumpers, Body Sheet Metal and Panels, Tires (except as may otherwise be provided under the SCHEDULE OF COVERAGES Section), Wheels or Rims, Nuts, Bolts, and Fasteners.

R. 32 at 19 (capitalization in original).

Belsky says that the categories of "nuts," "bolts," and "fasteners" is a sub-list of the category of "wheels" that precedes it. In other words, according to Belsky, the term "wheels" modifies every word that follows it, resulting in the interpretation that the Service Agreement does not provide coverage for "wheel nuts," "wheel

bolts," and "wheel fasteners." This is not a reasonable interpretation. The punctuation of a contract cannot be manipulated to alter the plain meaning of the text, and a court may consult the rules of grammar to ascertain the meaning of contract language. *Rich v. Principal Life Ins. Co.*, 226 Ill. 2d 359, 373-74 (2007).

Here, a reading of the Service Agreement demonstrates that the entirety of the clause to which Belsky points refers to a category of parts in the rotating assembly—"wheels or rims"—that is excluded from coverage. Put simply, the drafter of the contract intended for components of the rotating assembly to be excluded from coverage. It follows then that the separate categories of "nuts," "bolts," and "fasteners" are similarly excluded from coverage under the Service Agreement. Belsky alleges in her amended complaint that her vehicle was equipped with "defective aluminum gasket cover head *bolts.*" R. 26 ¶ 1 (emphasis added). Because "bolts" are not covered under the Agreement, Belsky cannot succeed on her claim that Prizm breached the Service Agreement by not covering the replacement bolt.[14]

---

[14] Because the language of the Service Agreement is unambiguous, the Court may interpret the contract, as a matter of law, at this stage. *See, e.g.*, *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 859-63 (7th Cir. 2002) (granting motion to dismiss on breach of contract claim); *Safety Solutions, Inc. v. City of Chicago*, No. 11 C 1305, 2011 WL 3652446, at *7-8 (N.D. Ill. Aug. 18, 2011) (granting motion to dismiss on breach of contract claim where contract language was unambiguous); *see also De Lage Landen Fin. Servs., Inc. v. M.D.M. Leasing Corp.,* No. 07 C 0045, 2007 WL 4355037, at *2 (N.D. Ill. Dec. 10, 2007) ("The interpretation of an unambiguous contract is a question of law that can be decided at the motion to dismiss stage."); *Guitar Center Stores, Inc. v. 7250 South Cicero Equities, LLC*, No. 07 C 4227, 2007 WL 3374592, at *3 (N.D. Ill. Nov. 8, 2007) ("At a minimum, there must at least be some ambiguity in the language of the contract before determining that its meaning cannot be resolved on a motion to dismiss.").

Belsky alternatively claims that even if bolts are excluded from coverage, the only parts in her vehicle that were replaced and for which she was charged were not, in fact, bolts, but screws and gaskets.[15] Accordingly, says Belsky, the parts that were replaced and the cost of the labor to replace the parts should have been covered because screws are not excluded from coverage under the Service Agreement. To support this argument, Belsky points to the Invoice, which characterized the replaced parts as "aluminum screws," a "torx screw," and a "collar screw."[16] R. 26 at 18, Exh. D, Invoice.

In any event, it is unnecessary to resolve any inconsistency about which part was replaced in Belsky's vehicle. Ultimately, Belsky's argument cannot succeed because even if the parts that were replaced were not bolts, but rather screws, screws are excluded from coverage under the Service Agreement too. As an objective guide to plain meaning when words are otherwise not defined in the contract, dictionary definitions are often helpful. *See, e.g., Valley Forge Ins. Co. v. Swiderski*

---

[15]  Despite Belsky's attempts to now alternatively argue in her opposition brief that the defective parts in her vehicle were screws, not bolts, it is clear that the central focus of her complaint has always been about the allegedly defective bolts. *See* R. 26 ¶ 1 (defining putative class to include "all persons . . . who purchased BMW Vehicles . . . with defective aluminum gasket cover head bolts"); ¶¶ 20-21 (alleging damages resulting from purchasing "a vehicle with the [b]olts as alleged herein" and from "Fields' and Prizm's actions in failing to repair or replace the [b]olts"); ¶ 25 (alleging common questions of law and fact warranting class treatment include "whether the Service Agreement sold by Fields on behalf of Prizm covers the [b]olts, at issue here); ¶¶ 31, 42 (alleging breach of Sales Contract by Fields by selling vehicles "with [b]olts that shear, crumble, or otherwise break" and breach of Service Agreement by refusing to cover the cost of repairs for vehicles "with the [b]olts").

[16]  Despite this characterization in the Invoice, the Invoice also noted that the work performed on Belsky's car was to replace "broken head bolts." R. 26 at 18, Exh. D, Invoice.

*Electronics., Inc.*, 223 Ill. 2d 352, 366 (2006). And here, Webster's dictionary defines screws as fasteners. *See* Webster's Third New Int'l Dictionary at 2040 (1986) (defining "screw" as "a cylindrical *fastener* that is usu. pointed, . . . and that is designed for insertion into material by rotating (as with a screwdriver)" (emphasis added); *see also* www.merriam-webster.com/dictionary/screw (defining "screw" as "a nail-shaped or rod-shaped piece with a spiral groove and a slotted or recessed head designed to be inserted into material by rotating (as with a screwdriver) and used for *fastening* pieces of solid material together") (emphasis added). Belsky cannot escape the plain language of the Service Agreement which explicitly excludes fasteners from coverage. At bottom, regardless of the characterization of the replacement part as "bolts" or "screws," neither are covered under the Service Agreement.

With her last alternative argument, Belsky contends that even if the cost of the replacement parts are excluded from coverage under the Service Agreement, the labor for the repair—$1,832.70 for 12.30 hours of Fields's technicians' labor—is not similarly excluded. Again, Belsky has pled herself out of court for an independent review of the Service Agreement demonstrates that the plain language of the Agreement precludes adopting Belsky's interpretation.

In the "Mechanical Breakdown" section of the Service Agreement, the Agreement provides: "In the event of a Breakdown of a part listed below, We will pay for the reasonable cost to repair or replace the part . . . in accordance with the general provisions contained within this Agreement." R. 32 at 18. The plain

language of the contract thus only extends coverage to labor costs incurred in repairing or replacing a part that is covered by the Service Agreement. Because the Service Agreement excludes coverage of bolts and screws, the labor cost to repair or replace either of these parts is not included in the coverage. Belsky therefore cannot succeed on this claim either.

Finally, Belsky contends that Prizm's reading of the Service Agreement is absurd, and the Court should avoid construing the contract in a manner that would reach an absurd result. Belsky claims that if the Service Agreement does not cover bolts, then Prizm would always be able to deny coverage for defective parts because most parts in a vehicle are constructed with bolts. Not so. Under the Service Agreement, if a part that is covered requires repair or replacement, then that part will be placed with the necessary hardware to restore or replace the part. But if the defective part is, for example, the bolt itself, then the defective bolt will not be covered. Such a result is not, as Belsky contends, absurd.

In sum, the Court has independently reviewed the plain language of the Service Agreement and has determined that it excludes coverage of the parts that Belsky contends were in fact covered. Belsky has therefore failed to demonstrate that Prizm breached the contract when it did not reimburse Belsky for those parts, and this Count against Prizm is dismissed with prejudice.

## Conclusion

For the foregoing reasons, Fields's motion to strike is granted, R. 30, and Fields's and Prizm's motions to dismiss are granted in their entirety, R. 30, 33. Belsky's motion for class certification, R. 7, is denied, and Belsky's complaint is dismissed with prejudice.

ENTERED:

Thomas M. Durkin
United States District Judge

Dated: October 29, 2013